UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff/Respondent,

**MEMORANDUM OPINION AND ORDER**
Crim. No. 11-228 (02) (MJD)

v.

Gerald Joseph Durand,

    Defendant/Petitioner.

_____

Tracy L. Perzel, Assistant United States Attorney, Counsel for Respondent.

Petitioner, *pro se*.

_____

This matter is before the Court upon the petition of Gerald Durand to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255.

## I. Introduction

Following an eight week trial, Petitioner was found guilty of multiple counts of aiding and abetting wire fraud, mail fraud and money laundering, conspiracy to commit wire and mail fraud, concealing material facts from the United States and filing false tax returns. These convictions arose from a Ponzi scheme that operated between July 2006 and July 2009, in which Petitioner and

1

others received over $193 million from hundreds of investors.

The evidence presented at trial demonstrated that Petitioner participated in a scheme to defraud victims by convincing them to invest their money in a sham currency program. For his part, Petitioner was involved in the marketing of the sham currency program through radio broadcasts, in presentations at the Van Dusen mansion and in personal contacts with victim investors. The evidence at trial also demonstrated that Petitioner attended many meetings with co-conspirators and that he knew co-defendant Beckman and Trevor Cook were dishonest. The evidence at trial also demonstrated that the Petitioner knew that Crown Forex S.A. was illiquid in May 2007 and that he took steps to prevent creditors from publicly exposing its illiquidity while continuing to invest victim funds into Crown Forex, S.A.

## II. Procedural History

Prior to his sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR") advising that the total offense level for the crimes of conviction was 43 and that his criminal history category was III. At sentencing, the Court granted Petitioner's motion for a downward departure as to criminal history, finding that a category I more appropriately represented the

seriousness of the Petitioner's criminal history and the likelihood he would commit other crimes. The Court then calculated the applicable guideline range based on the statutory maximum for each count of conviction as follows: Counts 1 to 13 - 20 years; Counts 18 and 19 - 10 years; Counts 24 and 25 - 5 years; and Counts 26, 28 and 30 - 3 years. But for the statutory maximum sentences for the crimes of conviction, the advisory guideline range would have been life in prison.

On January 3, 2013, the Petitioner was sentenced to a term of imprisonment of 240 months as follows: 240 months on Counts 1 through 13, 120 months on Counts 18 and 19, 60 months on Counts 24 and 25 and 36 months on Counts 26, 28 and 30, all terms to be served concurrently.

On appeal, the Eighth Circuit affirmed Petitioner's conviction and sentence. United States v. Beckman et al., 787 F.3d 466, 488 (8th Cir. 2015) reh'g denied (Jun. 17, 2015) and reh'g and reh'g en banc denied (Jun. 17, 2015).

On August 26, 2016, Petitioner filed the instant habeas petition in which he asserts he was denied effective assistance of counsel. He then filed a motion to amend his petition in June 2017 asserting new bases for his ineffective assistance of counsel claims. Petitioner claims that defense counsel: failed to zealously represent him; failed to inform Petitioner of a plea offer from the government in

3

January 2012; failed to secure Petitioner's knowing and voluntary waiver of his right to testify at trial; and failed to maintain attorney/client privilege while representing Petitioner.

### III. Standard of Review

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Section 2255 is intended to provide federal prisoners a remedy for jurisdictional or constitutional errors. Sun Bear v. United States, 644 F.3d 700, 704 (8th Cir. 2011). It is not intended to be a substitute for appeal or to relitigate matters decided on appeal. See Bousley v. United States, 523 U.S. 614, 621 (1998); Davis v. United States, 417 U.S. 333, 346-47 (1974)).

> Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice. A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default

4

and actual prejudice resulting from the error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citations omitted).

The Petitioner is entitled to an evidentiary hearing on his petition "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C.A. § 2255(b). "[A] petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (internal citations omitted).

**IV.    Merits Determination**

Claims of ineffective assistance of counsel may constitute both cause and prejudice to excuse a procedural default. Boysiewick v. Schriro, 179 F.3d 616, 619 (8th Cir. 1999) (citation omitted). Such claims must be scrutinized under the two-part test of Strickland v. Washington, 466 U.S. 668 (1984). Under the Strickland test, Petitioner must prove that: 1) counsel's representation was deficient; and 2) counsel's deficient performance prejudiced Petitioner's case. Kingsberry v. United States, 202 F.3d 1030, 1032 (8th Cir. 2000) reh'g and reh'g en banc denied,

5

(March 28, 2000).

To satisfy the first prong of the Strickland test, Petitioner must show that counsel's representation fell below an objective standard of reasonableness under professional norms. Strickland, 466 U.S. at 688. The inquiry should be whether counsel's assistance was reasonable considering all of the circumstances surrounding the case. Id. Judicial scrutiny of counsel's performance should be highly deferential and the general presumption is that counsel's conduct "falls within the wide range of reasonable professional assistance." Id. at 689.

To satisfy the second prong under the Strickland test, Petitioner must show that but for counsel's errors, the outcome of the proceedings would have been different. Id. at 691. The analysis may begin with the second prong and if Petitioner fails to show actual prejudice, the Court need not consider the reasonableness of counsel's behavior. Id.

**A.     Failure to Inform of Plea Offer**

Petitioner claims that in the fall of 2015, he learned for the first time that a formal, written plea offer was delivered to his attorney in January 2012. This plea offer provided that if Petitioner pleaded guilty to counts 12 (conspiracy to commit mail and wire fraud), 16 (money laundering) and one count of tax

6

evasion, the government would agree that the total offense level would be 33. (Petitioner's Ex. A.)  Depending on the Petitioner's criminal history category, the plea offer noted that the advisory guideline ranges were 135 to 168 months based on a criminal history category I or 151 to 188 months for a category II.  (Id.)

For this claim to have merit, Petitioner must establish prejudice by showing that had he been presented this plea offer, he would have accepted it. Engelen, 68 F.3d at 241; see also Missouri v. Frye, 132 S. Ct. 1399 (2012). Petitioner claims that there is a reasonable probability that he would have accepted this offer had it been presented to him and that he was prejudiced because as a first-time, non-violent offender, he most likely would have been sentenced to 135 months as his criminal history category was I.  Instead, he was found guilty on all counts and sentenced to a total of 240 months in prison.

The Court finds that this claim has no merit for a number of reasons.  First, as noted above, Petitioner's criminal history category was calculated to be III but was reduced to a category I based on this Court's decision to depart downward as to criminal history at sentencing.  Petitioner could not have known the Court would have granted a motion to depart as to criminal history when the January 2012 plea offer was made.

The Court further notes that Petitioner's reliance on Frye is misplaced. In Frye, the petitioner was not made aware of an earlier, more favorable plea offer, and later pleaded guilty under less favorable terms. Id. 132 S. Ct. at 1410. In this case, the Petitioner went to trial.

Finally, the record does not support Petitioner's claim that he would have pleaded guilty to any of the fraud counts. Throughout this case, the Petitioner has consistently maintained his actual innocence with respect to the fraudulent currency scheme. In fact, in the "Statement of Facts" section of his legal memorandum, Petitioner devotes ten pages to the argument that he held a sincere belief that the currency program was legal and that he did not defraud any of his clients. (Doc. No. 567, 3-11.) Furthermore, in an email from March 2012, Petitioner's counsel informed the government that Petitioner would plead guilty to one of the tax counts, but would not plead guilty to any of the fraud counts. (Toder Decl. Ex. 4.) Under these circumstances, Petitioner cannot demonstrate a reasonable probability that he would have admitted to those facts necessary to establish a factual basis for the charge of conspiracy to commit mail and wire fraud, as would have been required had he accepted the January 2012 plea offer. See Engelen, 68 F.3d at 241 (rejecting petitioner's claim that counsel

did not inform him of a plea offer prior to trial, where the record contained no evidence that he would have acknowledged guilt prior to trial and that he continued to assert his innocence after he was convicted); McNeil v. United States, 63 Fed. Appx. 963 (8th Cir. 2003) (same).

### B. Failure to Secure Knowing and Voluntary Waiver of Right to Testify at Trial.

Petitioner also claims that he did not knowingly and voluntarily waive his right to testify at trial. He claims that during a telephone conversation following trial, counsel indicated to Petitioner that counsel made a significant error in deciding that the Petitioner should not testify at trial. Based on this alleged admission by counsel, Petitioner claims his trial waiver was unknowing and involuntary.

The right to testify at trial is personal, as the accused has the ultimate authority to decide whether to testify on his own behalf. Jones v. Barnes, 463 U.S. 745, 751 (1983) (citing Wainwright v. Sykes, 433 U.S. 72, 93, n. 1 (1977)). In order to determine whether Petitioner understood that it was his decision whether or not to testify at trial, the Court asked counsel to discuss these rights on the record. (Trial Transcript XXV at 5915-16.) Counsel asked Petitioner a number of

9

questions to ascertain that he understood his rights with respect to testifying or not testifying at trial, his right to call witnesses and to present a defense. Counsel also asked whether he understood that if he chose not to testify, that the jury would be instructed they could not form an adverse inference about that decision. (Id. at 5916.) Petitioner's responses to these questions demonstrated that he and counsel had discussed these rights and that during these discussions, they weighed the benefits of testifying or remaining silent. (Id. 5916-18.)

The Court also asked Petitioner a number of questions to ensure that he understood his rights. In addition, the Court gave Petitioner the opportunity to think about his decision overnight. (Id. at 5917-19.) Petitioner repeatedly indicated that he understood his rights and that he had made the decision not to testify without undue influence. (Id.)

The next morning, Petitioner was again asked whether he understood his constitutional rights to testify at trial or remain silent. (Trial Transcript XXVI at 5958-59.) Petitioner informed the Court:

> I took your advice last evening, Your Honor, and pondered everything and thought through it and believe that the decision that I had reached prior is the decision I want to stand with. So thank you for the advice and I have elected to follow my advice of counsel and not testify.

(Id. at 5959.)

As set forth above, the record does not support Petitioner's claim that he did not knowingly or voluntarily waive his right to testify on his own behalf. Petitioner was advised of these rights on the record, and was given additional time to consider whether or not to testify after being informed of such rights. Petitioner was also asked by counsel and by the Court whether anyone had exerted any undue influence on him with regard to his right to testify, and he responded that no one pressured him to not testify - that the decision was his. Because the record conclusively demonstrates this claim has no merit, there is no need for an evidentiary hearing.

### C. Failure to Maintain Attorney/Client Privilege

On June 9, 2017, the Petitioner filed a motion to amend his petition to add the claim that counsel was ineffective in his failure to zealously represent him and by his failure to maintain his attorney/client privilege. Petitioner asserts that in March 2013, after he was sentenced, he was interviewed by agents from the Criminal Investigation Division of the Internal Revenue Service about James Pieron. The agents believed that Pieron had embezzled tens of millions of dollars and were seeking possible assistance from Petitioner to recover these funds.

11

Petitioner asserts that had he been able to help the government recover the money, he would have benefitted from a 5K1.1 motion from the government and received a sentence reduction. Petitioner asserts that following the interview with the IRS agents, he mailed a letter to his trial counsel advising him of the interview. In the letter, Petitioner claims that he specifically asked counsel to maintain complete confidentiality of the letter and its contents. Instead, Petitioner claims that counsel contacted the United States Attorney's Office, who in turn contacted the IRS agents who had visited Petitioner in prison. Thereafter, the IRS agents were no longer interested in engaging in further discussions with Petitioner.

The government asserts that the Court should deny the motion to amend the petition, as the claim that Petitioner seeks to add does not relate back to the claims in the original pleadings. As a result, the claim is time-barred. See United States v. Craycraft, 167 F.3d 451, 457 (8th Cir. 1999).

"An amendment to a pleading shall 'relate back' to the date of the original pleading only if the claim asserted in the original pleading and the claim asserted in the amended pleading arose out of the same conduct, transaction, or occurrence." Id. (citing Fed. R. Civ. P. 15(c)(2).) The government argues the

claim that counsel violated the attorney/client privilege after the Petitioner was sentenced does not arise out of the same conduct, transaction or occurrence as his earlier claims, which concerned pretrial plea negotiations and trial events.

The Court agrees that the claim included in the amended petition does not relate back to the claims in his original pleadings. Accordingly, the Court will deny the motion to amend the petition as the claim included therein is time-barred.

Even if the claim was timely, it is clearly without merit. To demonstrate prejudice, the Petitioner would have to show that he would have received a sentence reduction if allowed to provide substantial assistance to the IRS agents. However, pursuant to Rule 35 of the Federal Rules of Criminal Procedure, a motion for sentence reduction following sentencing may only be brought by the government. Counsel for Petitioner concedes that he had a conversation with counsel for the government to determine whether the government would be willing to file a Rule 35 motion, and that the government advised that it was not willing to consider such a motion. (Toder Decl. ¶ 5 (Doc. No. 680).) Absent such a motion, the Petitioner cannot demonstrate that he would have received a sentence reduction.

## V. Certificate of Appealability

With regard to the procedural rulings in this Order, the Court concludes that no "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right;" nor would "jurists of reason . . . find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). With regard to the decision on the merits, the Court concludes that no "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition to Vacate, Set Aside or Correct a Sentence Pursuant to 28 U.S.C. § 2255 [Doc. No. 566] is **DENIED**, and the Motion for Leave to File Amendment to Petition [Doc. No. 671] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: July 12, 2017

s/ Michael J. Davis
Michael J. Davis
United States District Court
